## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### (Charlottesville Division)

| | |
|---|---|
| MARKEL INSURANCE COMPANY )<br>4521 Highwoods Parkway )<br>Glen Allen, Virginia 23060 )<br> )<br>     Plaintiff, )<br> )<br>v. )<br> )<br>ALAN G. DILLARD, III )<br>2516 Carmine Street )<br>Nolensville, TN 37135 )<br> )<br>ANGELA J. DILLARD )<br>2516 Carmine Street )<br>Nolensville, TN 37135 )<br> )<br>PRIAM'S GATE LLC )<br>Serve on: )<br>   David Thomas, Registered Agent )<br>   310 4th Street NE, 2nd Floor )<br>   Charlottesville, VA 22902 )<br> )<br>TRN1 LLC )<br>Serve on: )<br>   Brian A. Craddock, Registered Agent )<br>   530 East Main Street )<br>   CHARLOTTESVILLE, VA 22902 )<br> )<br>     Defendants. )<br> ) | Civil Action No. <u>3:23-cv-00030</u> |

## <u>COMPLAINT</u>

Plaintiff Markel Insurance Company ("Markel"), by and through its undersigned counsel,

hereby states as follows for its Complaint against Defendants Alan G. Dillard, III, Angela J.

Dillard, Priam's Gate LLC, and TRN1 LLC (collectively, "Indemnitors" or "Defendants"):

## NATURE OF THE ACTION

1.     This is an action for enforcement of a written indemnity agreement that the Defendants executed in Markel's favor as consideration for Markel's issuance of payment and performance surety bonds at the request of A.G. Dillard, Inc., including for damages, specific performance, and injunctive relief, as a result of the Indemnitors continuing breach of their obligations to indemnity, exonerate, and hold Markel harmless from liability, damages and loss.

## THE PARTIES

2.     Plaintiff Markel is a corporation organized under the laws of the State of Illinois, with its principal place of business located at 4521 Highwoods Parkway, Glen Allen, Virginia 23060.

3.     Upon information and belief, Defendant Alan G. Dillard, III is a resident of the State of Tennessee.

4.     Upon information and belief, Defendant Angela J. Dillard is a resident of the State of Tennessee.

5.     Defendant Priam's Gate LLC ("Priam's Gate") is a limited liability Company organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business located at 295 Memory Lane, Troy, Virginia 22974.

6.     Defendant TRN1 LLC ("TRN1") is a limited liability Company organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business located at 295 Memory Lane, Troy, Virginia 22974.  Upon information and belief, Defendant TRN1 was previously known as TR Industries LLC prior to a name change on or about February 9, 2022.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332 because: (i) Defendants Alan G. Dillard, III and Angela J. Dillard are citizens of different states than Markel; and (ii) upon information and belief, the known members of Priam's Gate and TRN1 are citizens of different states than Markel.

8.      This Court has personal jurisdiction over defendant Alan G. Dillard, III because he is a former resident of Virginia and because he executed and delivered the General Agreement of Indemnity in favor of Markel in Virginia.

9.      This Court has personal jurisdiction over defendant Angela J. Dillard because she is a former resident of Virginia and because she executed and delivered the General Agreement of Indemnity in favor of Markel in Virginia.

10.      Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendants Priam's Gate and TRN1 reside in this Judicial District, and under 28 U.S.C. § 1391(b)(2) because the General Agreement of Indemnity in favor of Markel was executed, as well as breached, by each Defendant in this Judicial District.

11.      Venue also is proper in this Judicial District and Division because the General Agreement of Indemnity, which is the subject of this action, provides in Section 20 that Markel may enforce the agreement in any locale where any of the indemnitors reside or maintain an office, and additionally, where any bond obligations were to be performed.  In this matter, indemnitors reside, and bond obligations were performed, in both Albemarle County, Virginia and Fluvanna County, Virginia.

## FACTS COMMON TO ALL COUNTS

**A.      The Indemnity Agreement Executed by the Defendants**

12.      On or about March 14, 2019, Defendants Alan G. Dillard, III and Angela J. Dillard, each individually, as well as Alan G. Dillard, III, in his capacity as Sole Member of Defendant Priam's Gate and in his capacity as President of A.G. Dillard, Inc., executed the General Agreement of Indemnity (the "GAI") attached hereto as **Exhibit A** and incorporated herein by reference as if set forth in full.

13.      The Defendants, along with A.G. Dillard, Inc., are collectively defined to be "Indemnitors" under the GIA, and that term also applies to "any one or more of them, as applicable." (Ex. A., Preamble.)

14.      On or about May 23, 2019, Alan G. Dillard, III, in his capacity as Managing Member of Defendant TRN1 LLC Inc., executed a Rider to General Agreement of Indemnity (the "Rider") that added TR Industries LLC as a named Indemnitor under the GAI. The Rider to General Agreement of Indemnity is attached hereto as **Exhibit B** and incorporated herein by reference as if set forth in full.

15.      Upon information and belief, TR Industries LLC subsequently changed its name to TRN1 LLC in February 2022.

16.      TR Industries LLC's change of name to TRN1 LLC did not affect that entity's existing obligations to Markel under the Rider and the GAI.

17.      The GAI defines Markel, as well as its affiliates, SureTec Insurance Company, and SureTec Indemnity Company, as the "Company" or "Companies." (Ex. A., Preamble.)

18.      The first recital of the GAI states:

> **WHEREAS,** certain bonds, guaranties, obligations of suretyship, undertakings, agreements, and other instruments in the nature of a bond or ancillary thereto (all collectively referred to herein as "Bonds") have been, and may hereafter be, required by, for, or on behalf of, one or more of the Indemnitors.

(Ex. A., Recital 1.)

19. The Indemnitors executed the GAI as a condition to the issuance of Bonds by Markel, and Markel relied upon, and is relying on, the representations made by the Indemnitors in their application for such Bonds:

> **WHEREAS,** as a condition to the execution of any and all such Bonds, the Company has relied, and is relying on, the representations made by Indemnitors in connection with their application for such Bonds, and further requires execution of this General Agreement of Indemnity.

(Id. at Recital 2.)

20. The Indemnitors are jointly and severally obligated to indemnify Markel against all loss and expense and to perform all of the obligations set forth in the GAI:

> **WHEREAS,** the Indemnitors do hereby affirm to have a substantial, material, and beneficial interest in the execution of such Bonds and have agreed, jointly and severally, to indemnify the Company against loss or expense arising out of the underwriting and execution of such Bonds, and all claims and disputes arising thereunder, and to undertake to perform the obligations described herein.

(Id. at Recital 3.)

21. Under Section 2 of the GAI, the Indemnitors each agreed to indemnify Markel from and against every claim, demand, liability, cost, loss, or expense incurred as a consequence of issuing Bonds:

> The Indemnitors shall indemnify and hold the Company harmless from and against every claim, demand, liability, cost, loss, charge, suit, judgment, award, fine, penalty, and expense which the Company may pay, suffer, or incur in consequence of having executed, delivered, or procured the execution of such Bonds, or any renewals or continuations thereof or substitutes therefor, including, but not limited to, court costs, arbitration costs, collection costs and fees, mediation and facilitation fees and expenses, funds disbursement and escrow fees, fees and expenses of attorneys, accountants, adjusters, third party administrators, inspectors, experts, and

> consultants, whether on salary, employed by affiliates, third party administrators, or co-sureties, on retainer, in-house, or otherwise, and the expense of determining liability, or procuring, or attempting to procure, release from liability, or in bringing suit or claim to interpret or enforce the any of the obligations under the Bonds or of the Indemnitors under this Agreement.

(Ex. A., § 2.)

22.     According to Section 2 of the GIA, the Indemnitors are responsible to indemnify Markel for all loss, cost, and expense resulting from any investigation, settlement, or compromise, of a claim or demand against any Bonds:

> In the event the Company deems it necessary to respond to, make an investigation of, settle, defend, or compromise a claim, demand or suit, the Indemnitors acknowledge and agree that all loss, cost, indemnity and expense attendant to such response, investigation, settlement, defense, and compromise, whether incurred internally or otherwise, and whether or not Indemnitor has offered to defend Company, is included as an indemnified expense and shall be paid by Indemnitors to Company on demand.

(Ex. A. § 2.)

23.     Under Section 3 of the GAI, the Indemnitors are obligated to deposit collateral with Markel "as soon as liability exists or is asserted against the Company, whether or not the Company shall have made any payment therefor":

> Payment of loss or deposit of cash, cash collateral, or other collateral security acceptable to the Company shall be made to the Company by the Indemnitors as soon as liability exists or is asserted against the Company, whether or not the Company shall have made any payment or established any reserve therefor. Such payment shall be equal to the larger of (a) the amount of any reserve set by the Company, or (b) such amount as the Company, in its sole judgment, shall deem sufficient to protect it from loss. The Company shall have the right to use the collateral, or any part thereof, in payment or settlement of any liability, loss or expense for which the Indemnitors would be obligated to indemnify the Company under the terms of this Agreement. If for any reason the Company shall deem it necessary to increase a reserve to cover any possible liability or loss, the Indemnitors will deposit with the Company, immediately upon demand, a sum of money equal to any increase thereof as collateral security to the Company for such liability or loss.

(Ex. A. § 3.)

24.    The Indemnitors waived any potential challenge to Markel's right to collateral and they further agreed that Markel may enforce the Indemnitors' collateral obligation by specific performance:

> The Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest the requirements to provide collateral under this Agreement (such requirements, individually and collectively, the "Collateral Requirement"). The Indemnitors stipulate and agree that the Company will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that the Company is entitled to specific performance of the Collateral Requirement. The Company's failure to act to enforce its right to specific performance shall not be construed as a waiver of that right, which right may be enforced at any time at the Company's sole discretion. Indemnitors further agree that this Collateral Requirement shall not limit or be deemed a waiver of the Company's other rights, which it may exercise in its sole discretion, under this Agreement or otherwise to cancel Bond(s), to demand collateral, or to take any other actions the Company deems necessary and/or prudent, in its sole discretion, to mitigate actual or potential Losses under any and all Bonds. The exercise of such additional rights shall not be contingent upon the Company's enforcement of this provision.

(Ex. A., § 3.)

25.    Under the GAI, Markel also has the right to settle and compromise any claims brought against Markel, and Markel's decision whether to settle, compromise, prosecute, appeal, or defend, any claim or action is binding and conclusive upon the Indemnitors:

> [t]he Company shall have the right, but not the obligation, to settle, compromise, prosecute, appeal or defend any claim or action brought by or against the Company or the Indemnitors relating to any Bond, to any affirmative claims by any Indemnitor against Company, Bond obligees, Bond claimants, or third parties relating to any Bonds, any interests granted herein, and with respect to collateral security and interests provided hereunder.  Company's decision with respect thereto shall be binding and conclusive upon the Indemnitors.

(Id. at § 5.)

26.    Markel's affidavit signed by an officer of the Company "shall be *prima facie* evidence of the amount paid, the propriety and reasonableness thereof, and of the Indemnitors' liability therefor to the Company."  (Ex. A, § 2.)

27.     The Indemnitors also are required to pay interest on "all unpaid indebtedness of Indemnitors to Company at an interest rate equal to the lesser of: (a) ten percent (10%) per annum or (b) the Highest Lawful Rate . . . ."  (Ex. A § 8.)

28.     Under Section 6 of the GAI, the Indemnitors are obligated to provide Markel with access to their financial, and other, books and records:

> The Company, and its designated agents, consultants, and representatives, shall at any and all reasonable times, have free access to the books and records of the Indemnitors.  Indemnitors consent to Company's request for, and use of, consumer credit reports and investigative consumer credit reports with respect to any of the Individual Indemnitors.  Any bank, depository, creditor, credit bureau or credit reporting agency, obligee of a Bond, subcontractor, material supplier, claimant, prior surety, agent, or other person, firm or corporation possessing records or having information concerning the financial affairs and records or having information concerning the current or past financial affairs and operations of the Indemnitors is hereby authorized to furnish to the Company and its representatives, consultants, collection agencies, attorneys, and affiliates, any such records or information requested by the Company.  Indemnitors will execute, as requested by the Company, any additional documents necessary to cause the release and production of records and information authorized by this paragraph.  Indemnitors acknowledge that the Company may share copies of any and all financial statements, applications, statements, agreements, and any information, including personal and investigative credit reports, which it now has or may hereafter obtain concerning Indemnitors with affiliates, co-sureties, fronting companies, reinsurers, claims representatives, attorneys, and third party administrators.

(Ex. A § 6.)

**B.     Markel Issued Surety Bonds on Behalf of A.G. Dillard for a Construction Project in Earlysville, Virginia**

29.     On or about July 22, 2020, A.G. Dillard, as a subcontractor, executed a subcontract with Breeden Construction, LLC ("Breeden") to perform certain cleaning, grubbing, earth work, site work, utilities, paving and concrete work (the "Subcontract") for an apartment construction project known as Berkmar Landing located in Earlysville, Virginia (the "Project").

30.     In reliance on the GAI and at the request of A.G. Dillard, Markel, as surety, issued a Performance Bond and a Payment Bond (collectively, the "Bonds") on behalf of A.G. Dillard for the Subcontract work, which named Breeden as obligee.

31.     Upon information and belief, A.G. Dillard began experiencing financial difficulties during its performance of the Subcontract in late-2021 and into early-2022.

32.     In Section 4, the GAI provides that, "[r]ecognizing that the Company is relying on the financial information provided by Indemnitors, Indemnitors shall notify the Company immediately of any event which adversely affects the financial ability or stability of any Indemnitor," which includes A.G. Dillard.  (Ex. A.)

33.     Neither A.G. Dillard, nor any of the other Indemnitors, informed Markel of A.G. Dillard's financial difficulties in late-2021 and into early-2022.

34.     Markel learned about A.G. Dillard's financial difficulties in early February 2022, when Breeden, the obligee on the Performance Bond, sent correspondence to Markel stating that A.G. Dillard had not paid several of its subcontractors and suppliers.

35.     Then, on or about February 9, 2022, A.G. Dillard ceased performance on the Project and filed a voluntary petition in the U.S. Bankruptcy Court for the Western District of Virginia for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Action").

36.     The Indemnitors did not provide advance notice to Markel that A.G. Dillard would be filing the Bankruptcy Action.

**C.      The Indemnitors Breached Their Obligation to Deposit Collateral with Markel Due to Pending and Potential Bond Claims and Demands**

37.     Two days after A.G. Dillard's bankruptcy filing, Breeden made a demand under the Performance Bond that Markel arrange for the completion of A.G. Dillard's Subcontract.

38.     At or around the same time, several of A.G. Dillard's subcontractors and suppliers

for the Project notified Markel and Breeden that A.G. Dillard had failed to make payment for work performed and materials supplied to A.G. Dillard prior to its Bankruptcy Action.

39.    Two of A.G. Dillard's subcontractors and suppliers – Fortiline, Inc. ("Fortiline") and Luck Stone Corporation ("Luck Stone") – filed lawsuits against Markel in the Circuit Court for Albemarle County, Virginia on March 11, 2022 and April 7, 2022, respectively, in which each claimant asserted claims against Markel under the Payment Bond for outstanding payments owed by A.G. Dillard.[1]

40.    S.L. Williamson Co., Inc. ("S.L. Williamson"), a subcontractor to A.G. Dillard for the Project, filed a mechanic's lien in the Circuit Court of Albemarle County claiming that A.G. Dillard had failed to pay $268,058.55 that was due and owing for work that S.L. Williamson performed for A.G. Dillard on the Project.

41.    Another subcontractor/supplier of A.G. Dillard for the Project, Wilson Ready Mix ("Wilson"), also filed a mechanic's lien claiming that A.G. Dillard had failed to pay $15,260.24 that was due and owing for supplies it delivered to A.G. Dillard for the Project.

42.    Meridian Planning Group, LLC ("Meridian"), a surveyor for A.G. Dillard on the Project, also claimed that A.G. Dillard failed to pay $11,865 for surveying services that it provided to A.G. Dillard for the Project.

43.    In addition to demanding that Markel arrange for completion of the Subcontract, Breeden made demands upon Markel under the Bonds to remove the mechanic's liens from the property by resolving S.L. Williamson's and Wilson's claims for payment.

44.    As part of Markel's investigation of A.G. Dillard's alleged failures to make payment to its subcontractors and suppliers, Markel requested that A.G. Dillard provide any

---

[1] *Fortiline, Inc. v. Markel Ins. Co.*, Circuit Court for Albemarle County, Case No. CL22-318; *Luck Stone Corporation v. Markel Ins. Co.*, Circuit Court for Albemarle County, Case No. CL22-461.

defenses to the claims that it may have, and any other information from which Markel could ascertain whether, and to what extent, payments were due.

45.    In response to Markel's request set forth in the preceding paragraph, Markel received a spreadsheet from A.G. Dillard's in which A.G. Dillard represented that $486,990.24 was the total sum due to subcontractors and suppliers for work completed, and supplies delivered to A.G. Dillard, before A.G. Dillard filed its Bankruptcy Action.

46.    In the Bankruptcy Action, A.G. Dillard made the same representation to the Bankruptcy Court that a total of $486,990.24 was due to its subcontractors and suppliers.

47.    A.G. Dillard's representation to the Bankruptcy Court was that the following claims were "valid on account of work performed or to-be-performed":

| | | |
|---|---|---|
| a. | Luck Stone Corporation: | $24,963 |
| b. | Fortiline, Inc.: | $112,105 |
| c. | Wilson Ready Mix | $14,271 |
| d. | S.L. Williamson Co., Inc. | $268,058 |
| e. | Meridian Planning Group | $11,865 |

(Case No. 22-60115, ECF No. 131, dated April 4, 2022.)

48.    In April 2022 and again in May 2022, Markel transmitted letters to the Indemnitors demanding that they fulfill their obligations under the GAI, including by indemnifying Markel and holding Markel harmless from pending and threatened loss arising from: (i) Breeden's Performance Bond demand (ii) A.G. Dillard's acknowledged debt to subcontractors and suppliers, and (iii) the extent of fees and costs of attorneys and consultants already incurred and projected for Markel to investigate and resolve the claims and demands against its Bonds.

49.     Specifically, by letter dated April 13, 2022, Markel delivered to the Indemnitors a demand for the deposit of collateral in the amount of $1,150,000 ("Collateral Demand") within ten (10) days of receipt.  A true and correct copy of the Collateral Demand, without attachments, is attached hereto as **Exhibit C**.

50.     By letter dated May 31, 2022, Markel then sent the Indemnitors a letter that updated its demand for indemnification for its losses to date, and updated its collateral demand to $1,480,000, which accounted for the subcontractor and supplier debts acknowledged by A.G. Dillard's in the Bankruptcy Action ("Updated Collateral Demand ").  A true and correct copy of Markel's Updated Collateral Demand is attached hereto as **Exhibit D**.

51.     As of May 31, 2022, the amount of Markel's Updated Collateral Demand was the sum of security that Markel determined to be sufficient at the time to protect itself from loss arising from or related to the Bonds and the GIA.

52.     The purpose of Markel's collateral demands was to ensure that Markel maintained funds from the Indemnitors to fulfill their obligations under the GIA to indemnify and hold Markel harmless from and against every claim, demand, liability, loss, and cost resulting from the Bonds.

53.     To be indemnified and held harmless from liability and loss, Markel had "the right to use the collateral, or any part thereof, in payment or settlement of any liability, loss or expense for which the Indemnitors would be obligated to indemnify the Company under the terms of" the GIA.  (Ex. A § 3.)

54.     The Indemnitors, however, failed and/or refused to deposit any collateral with Markel as required under the GIA.

55.     By failing to deposit any collateral with Markel, the Indemnitors materially breached the GIA and irreparably harmed Markel by, among other things, diminishing and

impairing Markel's ability to protect itself from loss using the Indemnitors funds to resolve claims and demands against the Bonds and otherwise offset losses.

### D. Markel Incurred Loss and Expense Resolving Several Subcontractor and Supplier Payment Bond Claims and Mechanic's Liens

56. The Indemnitors' failure to deposit collateral, despite A.G. Dillard abandoning the Subcontract and acknowledging $486,990.24 was due to subcontractors and suppliers, forced Markel to expend hundreds of thousands of dollars of its owns funds to resolve A.G. Dillard's debts relating to the Project.

57. Markel paid $111,927.02 of its own funds to Fortiline, in exchange for Fortiline's dismissal of its lawsuit and Fortiline's full and complete release and waiver of all claims relating to the Project.

58. Markel paid $23,864.38 of its own funds to Luck Stone, in exchange for Luck Stone's dismissal of its lawsuit and Luck Stone's full and complete release and waiver of all claims relating to the Project.

59. Markel paid $268,058.55 of its own funds to S.L. Williamson, in exchange for S.L. Williamson's dismissal of its mechanic's lien and S.L. Williamson's full and complete release and waiver of all claims relating to the Project.

60. Markel paid $15,260.24 of its own funds to Wilson, in exchange for Wilson's dismissal of its mechanic's lien and Wilson's full and complete release and waiver of all claims relating to the Project.

61. Finally, Markel paid $11,865 of its own funds to Meridian, in exchange for Meridian's release and wavier of claims relating to the Project.

E.    **Markel Settled Breeden's Demand Under the Performance Bond that Markel Arrange for Completion of the Subcontract**

62.    As averred above, Breeden made a demand upon Markel to arrange for completion of A.G. Dillard's Subcontract, as well as to pay additional costs, including attorneys' fees, that Breeden presented as damages due under the Performance Bond because of of A.G. Dillard's abandonment of its Subcontract.

63.    In connection with its demand under the Performance Bond, Breeden provided Markel with proposals that Breeden obtained from other contractors to complete what Breeden considered to be the remaining scope of work under A.G. Dillard's Subcontract.

64.    Breeden's estimated cost to complete A.G. Dillard's Subcontract totaled approximately $1,139,767.60.

65.    Breeden also provided Markel with an estimate of its own additional costs and expenses that it was seeking from Markel, which was approximately $61,000.00.

66.    Markel conducted an independent investigation of the Performance Bond demand, including by retaining consultants and legal counsel, analyzing the remaining Subcontract work to complete, visiting the Project site on multiple occasions, obtaining cost estimates for the remaining Subcontract work, and engaging in meetings and discussions with Breeden through its counsel.

67.    A.G. Dillard did not provide input into the investigation.

68.    Ultimately, Markel reached a settlement with Breeden under which Breeden agreed to undertake completion of the Subcontract at its own final cost and risk, and Breeden released and waived all claims and demands against Markel under the Performance Bond, including for delay damages, attorneys' fees and other costs and expenses, in exchange for a payment from Markel in the amount of $250,000.00.

69.     Markel's prompt resolution of Breeden's Performance Bond substantially mitigated the Loss for which the Indemnitors are responsible under the GAI.

**III.    Defendants Have Breached Their Obligations to Markel Under the GAI**

70.     Following Markel's settlement with Breeden, on February 1, 2023, Markel sent the Indemnitors an Updated Indemnity Demand Letter based on its accounting of losses and expenses incurred in relation to the Bonds and the GAI as of January 26, 2023.  A true and correct copy of the Updated Indemnity Demand Letter is attached hereto as **Exhibit E**.

71.     In the Updated Indemnity Demand Letter, Markel demanded that the Indemnitors fulfill obligations under the GAI by reimbursing Markel for its then-present losses, amounting to $773,713.65, within ten (10) days.

72.     The Indemnitors failed to indemnify Markel, and have not responded in any manner to the Updated Indemnity Demand Letter.

73.     Since the transmission of the Updated Indemnity Demand Letter, Markel has paid its legal counsel an additional $7,801.74, which is a further loss recoverable from the Indemnitors under the GAI.

74.     As of the date of this Complaint, the Indemnitors have not indemnified Markel for any of its losses or expenses as they were required to do under the GAI.

75.     As of the date of this Complaint, Defendants also have failed and/or refused to provide any collateral to cover Markel's continuing exposure to claims, lawsuits, fees and expenses arising from the Bonds and the GAI.

76.     As a result of the Indemnitors' failure to post collateral in April 2022 as demanded, Markel has been placed at risk of becoming an unsecured creditor of the Indemnitors, in contravention of the GAI.

77.    As of the date of this Complaint, the Indemnitors have failed and/or refused to provide Markel, its representatives, and consultants, with access to their financial books and records.

78.    Markel has satisfied all conditions precedent to assert the causes of action and relief requested in this Complaint.

## COUNT ONE – BREACH OF CONTRACT
### (Money Damages)

79.    Markel incorporates by reference Paragraphs 1 through 78 of this Complaint as though fully set forth herein.

80.    At the request of the Indemnitors and in reliance upon the GAI, Markel issued the Bonds to A.G. Dillard in connection with its Subcontract with Breeden.

81.    The Defendants owed duties to Markel in relation to claims and demands against the Bonds as set forth in the GAI, several of which are outlined elsewhere in this Complaint.

82.    As set forth elsewhere in the Complaint, the Defendants are obligated under the GAI, among other things, to indemnify Markel and to hold Markel harmless from all liability, cost, loss, charge, suit, judgment, award, and expense arising from every claim and demand.

83.    Markel has incurred losses, costs, and damages arising from, but not limited to, investigating, defending, and resolving actual and potential claims and demands made under the Bonds.

84.    Markel has made expenditures in good faith to investigate, settle, compromise, or otherwise satisfy, claims, liabilities, and/or demands by subcontractors, suppliers, and the obligee.

85.    As a result of the Defendants' defaults under the GAI, Markel has presently incurred unreimbursed losses, costs, and damages totaling at least $781,515.39.

86.     In violation of the terms of the GAI, the Defendants failed and/or refused to indemnify or hold Markel harmless from the $781,515.39 in losses, costs, fees, and expenses that it has incurred to date.

87.     To date, Markel has been damaged by the Defendants breaches of the Indemnity Agreement in an amount not less than $781,515.39.

88.     Markel continues to incur losses, costs, and damages in pursuit of its rights under the GAI, including the costs and expenses of this action, which are recoverable from the Defendants under the GAI.

WHEREFORE, Plaintiff Markel Insurance Company requests that this Court enter judgment in favor of Plaintiff against the Defendants, jointly and severally, in an amount to be proven at trial, but not less than $781,515.39, plus accruing attorney's fees, legal costs and expenses, interest, any other additional losses, and expenses incurred as a result of the Defendants' breaches of the GAI, and any other further relief this Court deems just and proper.

## COUNT TWO – BREACH OF CONTRACT
### (Specific Performance)

89.     Markel incorporates by references Paragraphs 1 through 78 of this Complaint as though fully set forth herein.

90.     As of A.G. Dillard's abandonment of the Subcontract and its filing for bankruptcy protection in February 2022, and continuing thereafter to the present date, Markel has been exposed, and remains exposed to potential claims, liability, and Loss under the Payment Bond and under the GAI.

91.     Markel's exposure to potential claims, liability, and Loss under the Payment Bond and under the GAI include the potential for additional subcontractor and supplier claims of

nonpayment by A.G. Dillard, as well as additional attorneys' fees, consulting fees, costs, and other expenses.

92.    As of the date of this Complaint, and notwithstanding such potential for claims, liability, and Loss, Defendants have failed to comply with the Collateral Requirement under Section 3 of the GAI.

93.    In violation of the Collateral Requirement in Section 3 of the GAI, the Defendants have refused to deposit collateral security with Markel to hold harmless, indemnify, and keep indemnified, Markel against all pending and future losses, claims, liabilities, damages, and demands in connection with the Bonds and the GAI.

94.    As a result of the Defendants' failure to satisfy their Collateral Requirement in Section 3 of the GAI, there is reason to be concerned that the Defendants will not, or cannot, post sufficient collateral to hold harmless, indemnify, and keep indemnified Markel under the terms and conditions of the Indemnity Agreement without relief from the Court.

95.    The Indemnitors stipulated and agreed in Section 3 of the GAI "that the Company will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that the Company is entitled to specific performance of the Collateral Requirement." (Ex A.)

WHEREFORE, Plaintiff Markel Insurance Company requests that this Court enter judgment in favor of Plaintiff against the Defendants, jointly and severally, containing the following:

(A)    an Order for specific performance of the Collateral Requirement under Section 3 of the GIA; and

(B)    an Order that the Defendants must immediately deposit cash collateral, or other collateral security acceptable to Markel, in an amount not less than $100,000, as may be amended, representing the amount of subcontractor/supplier exposure under the Bonds, plus legal and consulting fees, costs, and other expenses; and

(C)    any other further relief this Court deems just and proper under the circumstances.

**COUNT THREE – INJUNCTIVE RELIEF**
**COLLATERAL OBLIGATION**

96.    Markel incorporates by references Paragraphs 1 through 78 of this Complaint as though fully set forth herein.

97.    Markel seeks injunctive relief that requires the Defendants to post cash collateral, or an alternative form of security acceptable to Markel, to remedy the irreparable harm that Markel is currently experiencing every day in which Markel is exposed to Payment Bond claims, liability, Loss and expenses, without the Defendants fulfilling their Collateral Requirement under Section 3 of the GAI.

98.    By the express provisions of the GAI, the Defendants have been obligated to deposit collateral with Markel at least as of A.G. Dillard's abandonment of the Subcontract and its filing for bankruptcy protection in February 2022.

99.    To date, however, the Defendants have failed and/or refused to fulfill the Collateral Requirement of the GAI.

100.    Unless injunctive relief is granted, Markel will not be adequately secured for any Payment Bond obligations, liability and Loss that may arise hereafter as a result of the Defendants' breaches of the GAI, all to the prejudice and irreparable harm of Markel.

101.    The Defendants contractually acknowledged and agreed in Section 3 of the GAI "that the Company will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement…"

102.    Indeed, no remedy at law exists for when the Defendants fail to post collateral as security for potential claims, liability, and Loss under the Payment Bond and under the GAI.

103.    Unless injunctive relief is granted, assets may be sold, transferred, disposed of, encumbered, secreted, or otherwise diverted, instead of being used to discharge Defendants' obligations to exonerate and indemnify Markel, all to the prejudice and irreparable harm of Markel.

WHEREFORE, Plaintiff Markel Insurance Company requests that this Court enter judgment in favor of Plaintiff against the Defendants, jointly and severally, containing the following:

(A)    an injunction commanding the performance of the Collateral Requirement under Section 3 of the GIA;

(B)    an Order that the Defendants must immediately deposit cash collateral, or other collateral security acceptable to Markel, in an amount not less than $100,000, as may be amended, representing the amount of known subcontractor/supplier exposure under the Bonds, plus legal and consulting fees;

(C)    and such further relief as this Court deems just and proper under the circumstances.

## COUNT FOUR – INJUNCTIVE RELIEF
## BOOKS AND RECORDS OBLIGATION

104.    Markel incorporates by references Paragraphs 1 through 78 of this Complaint as though fully set forth herein.

105.    Markel seeks injunctive relief that requires the Defendants to comply with Section 6 of the GAI.

106.    By the express provisions of Section 6 of the GAI, the Defendants agreed to provide Markel, its agents, representatives, and consultants, with "free access to the books and records of the Indemnitors."

107.    On May 31, 2022, Markel invoked Section 6 of the GAI to request access to the Defendants' financial records and bank and investment statements, mortgage documents, tax returns, and any other documents that would state value of each of your current assets and liabilities, including all cash, investments, real and personal property, loans, mortgages, and other debts.

108.    As of the date of this Complaint, the Defendants have failed and/or refused to fulfill their obligation under Section 6 of the GAI to provide Markel with access to such documents.

109.    Unless injunctive relief is granted to enforce Section 6 of the GAI, Markel will not have any visibility into the assets of the Indemnitors that could be available to secure their obligations to provide collateral security, indemnify, and hold Markel harmless for the losses incurred as a result of its issuance of the Bonds and as a result of the Defendants' breaches of the GAI, all to the prejudice and irreparable harm of Markel.

110.    No remedy at law exists for when the Defendants fail to provide access to their books and records.

WHEREFORE, Plaintiff Markel Insurance Company requests that this Court enter judgment in favor of Plaintiff against the Defendants, jointly and severally, containing the following:

(A)    an injunction commanding the performance of Section 6 of the GIA;

(B)    an Order that the Defendants must immediately provide Markel, its agents, representatives, and consultants, with access to the Defendants' financial records and bank and

investment statements, mortgage documents, tax returns, and any other documents that would state

value of each of your current assets and liabilities, including all cash, investments, real and

personal property, loans, mortgages, and other debts; and

      (C)    any such further relief as this Court deems just and proper under the circumstances.

Dated:  May 30, 2023               Respectfully Submitted,

                      /s/
                 Adam M. Tuckman
                 VSB No. 75527
                 Vivian Katsantonis
                 VSB No. 30448
                 Attorneys for Plaintiff Markel Insurance Company
                 Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
                 1765 Greensboro Station Place, Suite 1000
                 McLean, Virginia 22102
                 (703) 749-1000 (telephone)
                 (703) 893-8029 (facsimile)
                 E-mail: atuckman@watttieder.com
                         vkatsantonis@watttieder.com